Calling case 15-5202 Sabrina Corley v. WalMart Stores East LP Oral argument not to exceed 15 minutes per side George Rowlett for the appellant Please the court, my name is George Andrew Andy Rowlett I represent WalMart, the appellant in this matter, the defendant at the trial court level May I have 5 minutes for rebuttal? Yes, farewell This matter is a personal injury matter, a slip and fall that went to trial in November 2014 The jury found for the plaintiff Sabrina Corley and rendered a judgment of a total amount of $525,000 It was reduced by 10% of comparative fault to $472,500 The trial court denied WalMart's motion for judgment as a matter of law during trial and the post-trial motion for judgment as a matter of law and its motion in the alternative for a new trial WalMart is requesting that this court determine that those motions should have been granted and enter judgment as a matter of law in favor of WalMart or alternatively for a new trial Would the court care to hear any of the facts? Or shall I proceed to argument? I'll leave that up to you, it's your argument Yes, your honor But I think we are familiar with the facts, I will tell you that Well, your honor, I'll just proceed then into argument The four elements that I'd like to address in summary are The plaintiff's argument that the water must have been present for more than an hour which is the crux of the plaintiff's claim Second, I'd like to talk about the similarity of the case law that supports WalMart's position in this matter Thirdly, I'd like to address plaintiff's argument that WalMart is asking this court to re-weigh the evidence And thirdly, pardon me, fourth, I'd like to address the recurring incident theory Now, the first argument has to do with the water and whether it was present for over an hour This claim is based on constructive notice There's no proof that any WalMart employee actually created the condition or that any WalMart employee had actual notice of the water being on the floor before Ms. Corley slipped So this case is a constructive notice case That's plaintiff's theory and that was what was tried at the trial court The plaintiff argued that the water must have been present for over an hour This is based on the videotape preserved by WalMart which has an hour before the accident and an hour after the accident Now, the location where Ms. Corley slipped, you can see on the video where she turned her knee So that area was videotaped for an hour before but you can't see the water, the viewer cannot see the water itself on the video The plaintiff argued that because the viewer cannot see water on the video it must have been there for over an hour and it must have been put on the floor before the video that was saved There's no basis for this This is speculative Water is clear and essentially invisible for this camera and cannot be seen even if it's moving There's no testimony or evidence to the contrary And so to say that the water must have been there more than an hour or else it appeared magically is really calling for speculation by the jury I know the jury can't speculate but circumstantial evidence would be important in a case like this It's the case that the jury would have been aware that WalMart did not preserve video for more than an hour preceding the accident Maybe the water was spilled prior to an hour which I guess is your opposing counsel's theory here So the jury may well have been concerned as to why WalMart did not preserve the video for more than an hour's time preceding the accident since obviously you would have known that the accident had occurred and then photographs were taken of the accident scene presumably also of where the water was perhaps there were dry spots in the water some other indication as to how long the water might have been there but none of those photographs were preserved by your client Don't you think it might have been reasonable for the jury to take that into account not that they were given an instruction on adverse inference but nevertheless we'd expect the jury to take all facts and circumstances into account to determine the credibility of the parties and the credibility of the testimony of the parties so wouldn't that be a problem for your client at trial? Your Honor, that's really the only articulable possible basis or argument for the plaintiff and they definitely talked about that at trial As to the video, there was testimony and it was established that it's WalMart's policy and procedure to save an hour before and an hour after as a matter of standard practice and that was done for the jury to conclude I mean there was no video from before that hour Well why would you destroy the video for more than an hour when you knew that there was an accident that had just transpired and obviously the fineness of the fact that there were litigation would be interested in an issue like this Your Honor, the standard practice that has been developed is an hour before because that shows it's hard to develop a fact pattern where more than an hour before could possibly show anything relevant and that's true in this case as well, Your Honor There were many, many people on the video walking through that area It's a busy store There are lots of traffic, lots of associates, lots of customers before there So in terms of circumstantial evidence and assessing the possibility that the water was there before under the case law of Tennessee courts, state courts and some of the district courts and this court in the Bradley case about a year ago the jury considered apparently the issue that the court is addressing but it is speculative as to whether or not it would have shown anything before and the circumstantial evidence all indicates that it was not there or somebody else would have That's an argument I mean we have certain facts There's a video and it does not show a source of the water during that period of time and yet we know as fact that it was there and so the jury has two inferences it can make It can make the inference that look, it was there and we didn't see another source for it and although there were people walking there they weren't walking in the exact same place and it's clear, it's very possible they didn't notice it but it's Walmart's job to notice it and we're going to conclude that it was there because there was no other source for it that we could see or the jury could have concluded based on their own personal experiences that it's true it was there we didn't see your source but it just doesn't make sense that that many people would have walked by and not seen it so we're going to conclude that we missed something or there's something missing but it was actually there and both of them are reasonable inferences Well your honor there's a possible source of the water is aisle 6 where the documents list as the aisle where the accident occurred But we know it didn't occur in aisle 6 because we saw it on video Well your honor the source of the spill very well could have been But we also saw them cleaning up after and it wasn't down aisle 6 Your honor I beg to differ if the video shows people who were cleaning say this was the dividing line and I'm in aisle 6 they go back and forth between the aisle called an action alley where the video captured and into aisle 6 which is outside the court's view But the jury could have concluded where the predominant activity was and I suppose that if you had and I would think that somebody did do put a level on the floor and see if there was a slant and that if there had been a slant into action alley the jury would have heard about it to show that it really came from 6 and just flowed there But you know sometimes you lose trials I mean the jury it's not like they didn't have the tape and it's not like none of these are permissible inferences from the tape Your honor my time is up may I respond Sure, sure you can always respond to a question from the bench Thank you your honor when there are two a number of the cases that we cited discussed when there are two reasonable inferences and how if the only basis for concluding which one would be the selected one is speculative and there's not evidence supporting the one particularly that the plaintiff is arguing for then it's speculation and your honor that's exactly what this case is as with multiple cases there's just not a reasonable basis for concluding that it must have been there over an hour particularly with all the other evidence the people cleaning into aisle 6 the lady with the ponytail who walked right across the area of the spill right before and I would request the court to find the analogous cases that were cited multiple cases Taylor, Webster, Griffin, Self over and over have this very similar fact pattern your honor that the court has laid out and I've said juries are not allowed to speculate when there's not a reasonable basis Thank you Good morning your honor Donald Caporello of the National Bar I represent Sabrina Corley in this case your honors have asked a question about the video not being preserved and the pictures not being preserved and that's a very good point as far as circumstantial evidence but there's an additional piece of circumstantial evidence that the trial court focused on when he affirmed the jury verdict. He said that after the lady in red had been ruled out by Walmart's own witness as a potential source for the water because they acknowledged that she was carrying a piece of paper and not a cup Brian Hicks who was the person that originally focused on the lady in red he specifically acknowledged and the trial court found that he specifically acknowledged that he couldn't see any other potential source of water from the surveillance video and in front of the jury the plaintiff's the trial lawyer carefully went through the videotape in segments and would stop it after every five or six minutes and ask Mr. Hicks in front of the jury do you see a source of water in the area of the spill and he would say That's not their argument. Their argument is okay you can't see see a source but the tape only shows the main alley and somebody could have spilled something something could have happened in aisle 6 near the corner there. Well their position was that when Ms. Corley parked her cart at the corner of Action Alley and aisle 6 she then left her cart and went for a couple of minutes down the aisle and then came back in and their position was the water could have spilled in from aisle 6 at that point but there are two facts that rule that out as a possibility an eyewitness Sabrina Corley herself says that there was nobody else in the aisle with her that could have caused the spill during that period of time her son didn't cause it he didn't kick anything over she didn't cause it didn't come from her cart and she also identified that the size of the spill was about the size of a plate so it was a discreet spill so it couldn't have rolled in from aisle 6 or it would have spread all the way out to aisle 6 unless the jury is going to posit the magical idea that somebody could throw water from aisle 6 from off camera and have it land in a perfect spot and stay and not spread out then that rules out that potential possibility and doesn't make it an equally reasonable inference as the circumstantial evidence that it must have been there for an hour because there is no other source for it so I think that that rules that out your honor. Their position is that no jurors did in this case and that no reasonable minds could support the premise that the water was there for at least an hour because we don't know beyond an hour because they didn't preserve the video. Of course the trial court is presumably a reasonable mind and the trial court saw the same testimony and the same video that the jury did and he found that it was a reasonable inference particularly based on that particular witness when he acknowledged there could not have been any other source so that is I mean that's their position because the trial court affirmed it so there are reasonable minds that were present and all the safeguards for a jury speculating meaning the trial judge reviewing it and affirming that there was a factual issue were there to protect them from a jury speculating. They also argued that the jury was speculating about well they argued that there must have been there would have been tracks in the water from people walking through this area during that hour and since there weren't tracks in the water that were visible  a jury speculating. The jury also argued that couldn't have been there for an hour. Of course the problem with that is there were pictures six pictures taken of the spill area right afterwards and the exact quote from the record was that would have been the best evidence of what the spill looked like. So if there was tracking showing that it had been tracked through showing that the water spill had been there for a while we would know it but the six pictures weren't preserved. So they have kind of created a mystery about that and want to take advantage of that very mystery that they've created to show that the jury must speculate and they shouldn't be allowed to create their own mystery in that way. What was Longmont's explanation as to why they didn't preserve the pictures? There was no explanation. Several witnesses were asked why and they said they didn't know. So we're left with a jury verdict that was affirmed by the trial court. They're not challenging the amount of damages. They're simply saying the jury should never have got the case. So unless your honors have any other questions I think this is directly just a factual question that the jury was entitled to rule upon. They had their chance at trial. They put their arguments out there and the jury ruled our way and there is material evidence to support the jury's verdict. They have no arguments that there was any legal error by the trial court except for the fact that they said the trial court should have taken away from the jury. So unless there are any other questions I think the video tells the tale that there was circumstantial evidence. Yes, your honor. Which witnesses described the water? It was, I can give you the witness and the page, your honor. It was Sabrina Corley on page 60 of the record where she describes that it was the size of a plate. And then you can see on the video, it's not a witness, but you can see on the video that the person who, once Ms. Corley talks about the spill to the Walmart worker, the Walmart worker walks over to the end of Action Aisle and guards an area that's clearly out in the Action Alley and not in the aisle and then they clean up for almost the entire time an area about that size. And they only slosh over into aisle 6 at the very end as a precaution I guess because whenever you wipe up water you can push it farther out. Did any of those workers testify? They testified, but not about the size of the spill. The only people that testified about the size of the spill was Ms. Corley herself. And then we have the video evidence showing how much area they cleaned up for the majority of the time. So that shows the size of the spill. And that's certainly material evidence for the jury to see that. And that also rules out the idea that water could have rolled in over a large area off aisle 6 because where the Walmart employee is guarding the spill is really two or three steps before you get all the way off camera. That would be several feet of a spill. So that suggests that it was a small enough spill to not have come from aisle 6. But a big enough spill obviously for them to guard it and to have cleaned it up and for Ms. Corley to have slipped on it. I understand that one of Walmart's arguments is that some of their employees passed back and forth in the vicinity of the spill didn't appear to notice any water on the floor and since they're trained to look for such things that's really evidence that there was no water there in sufficient time prior to the accident such that Walmart would have had prior notice that there was water there that needed to be cleaned up. And I guess the argument is that's the only evidence available as to how long the water was there, whether it was there long enough for the store to have had notice and known that it needed to remove the water. What would you say to that? Well, we know the water was there, so when they walked Mr. Hicks through the video very carefully and marked out everything, he pointed out all the Walmart employees that were in the area from time to time they aren't necessarily looking down. You can't really tell that they're looking down. So, Your Honor, the definition of negligence is Walmart employees in the area not seeing the spill. So that is evidence of their negligence because they are supposed to be constantly vigilant, unlike the customers who are supposed to be looking at the shelves and not looking at their feet. They just missed it. Now, maybe it is surprising that they missed it. I'm sure that the Walmarts do a good job most of the time, but in this case, several employees over that hour were in that general vicinity and they missed it. And that's the definition of negligence. They missed something they should have seen. One of their witnesses testified, Mr. Turnstile, who was in the store, get his exact quote. He agreed to the following, that if the Walmart employees either failed to see it or saw it or ignored it, then they broke the rule of constant vigilance. So that, my response to your question, Your Honor, is that that's the definition of negligence. They missed it. And they are not supposed to miss it because they have a duty to find it and if it's circumstantially there for at least an hour, that's plenty of time for them to have found it, particularly since they're right in that general area, but they missed it. So, unless there are any other questions, I'm done and we would respectfully request that Your Honor affirm the verdict in all respects. Thank you. Thank you. Any rebuttal? Yes, Your Honor. The plaintiff testified that nobody else was on the aisle initially, but then when shown the video, she backtracked on that. The video shows that while she was in the aisle, the lady with the ponytail walked into the aisle, into her aisle, definitely while she was there. The plaintiff admitted that on pages 63 and 64 of the record. The video also shows after she walked out, very soon after, two other people came out of the aisle, aisle 6, very near Ms. Corley. The first one appears to be a male, the second one appears to be a female. The male... At what point in time? Do you mean after the accident? Very soon after the accident. And the point of that is, Your Honor, that Ms. Corley was wrong and disproven by the video when she said there was nobody else on the aisle with her. Well, she wouldn't have been referring to what occurred after the accident, would she? She was just... Or what difference would it make who went into the aisle after the accident? Your Honor, they came... They didn't go into the aisle after, they came out of the aisle after. And based on the time she was. The video establishes that without any reasonable question, Ms. Corley essentially admitted she was wrong about the lady in the ponytail walking into the aisle while she was there. And if a video conclusively establishes something, a party's testimony to the contrary doesn't have any weight. It's just conclusively established. Your Honor, as to the photos, it again is shown on the video. These two customers walked through the area and maybe another right after the accident. Ms. Corley was asked what the spill looked like. She saw it. She didn't say anything about whether it looked like it had any tracking. She talked about the size of it. So there's been no evidence from the plaintiff. Plaintiff's got the burden of proof about what the spill looked like right after. Also, it was cleaned up... You're not disputing that the spill was there. Everybody acknowledges that and it was cleaned up. Okay. Your Honor, the issue I think was raised about whether what the spill looked like afterward is indication of how long it had been there. And the plaintiff didn't have... The plaintiff saw it. She saw it and she remembered. She remembered the size of it. She didn't remember anything about whether it looked like it had been there any length of time. Other people had walked through it on the video and it got cleaned up before. And again, you can see the photos being taken on the video. And you can see it be cleaned up before. There were a bunch of people in the area, Your Honor, and Ms. Corley had already slipped. And a lot of times they've got to do what they can to be sure nobody else slips, which is why... Can you tell us why the photos of the accident scene were not preserved? I cannot, Your Honor. This does happen from time to time. It was not explored by the plaintiff. There's a substantial body of law in federal court on spoliation. No spoliation instruction was requested. That issue was not brought up or requested. And without an adverse inference instruction being given and the defense having an opportunity to address that legal instruction and whether it's appropriate or not, without there being a record developed at the appellate level, it's too late. There's not enough evidence for the court to consider this as if an adverse instruction had been given. One was not requested. One was not given. And so it's not appropriate under how I read appellate practice to be talking about that issue or to be considering it in plaintiff's favor at this time. As to the video, Your Honor, I wanted to address the jury could only speculate about what it may have shown during the hour more than one hour before. There were a bunch of people walking over for an entire hour, Your Honor. I mean, it was person after person. This is a busy store. And not only were there Walmart associates in the area, a lot of them, but there were Walmart customers. And the testimony was that Walmart customers will often report spills. Your Honor, in closing, I would urge the court to look at the case law that's been cited by the parties. You'll notice counsel did not mention a single appellate opinion. And there's a reason for that. The two that they've cited don't apply. Multiple others that Walmart has cited do apply. This case is about speculation. Thank you. Thank you very much. Case is submitted.